Ronald Wilcox, Esq., 176601
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@post.harvard.edu

**ATTORNEY FOR PLAINTIFF**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| LEZLIE CANADA ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No._____ |
| v. ) | |
| ) | |
| CLIENT SERVICES, INC. ) | |
| ) | |
| ) | |
| Defendant**.** ) | |

## COMPLAINT

## DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.   This is an action for damages brought by an individual consumer on their own behalf and on

behalf of members of the general public to redress the Defendant's violations of the Fair

Debt Collection Practices Act, 15 U.S.C. 1692, et seq. (hereinafter "FDCPA") and

California's Rosenthal Fair Debt Collection Practices Act, Civil Code 1788 et seq.

(hereinafter, "state Act"), which prohibit debt collectors from engaging in abusive, deceptive

- 1 -

and unfair practices in their collection of consumer debts.  Plaintiff alleges that Defendant engaged in a campaign of telephone abuse in an attempt to collect a debt.

## II.  JURISDICTION AND VENUE

2.  Jurisdiction of this Court arises under 15 U.S.C. sec. 1692k(d), 28 U.S.C. sec. 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. sec. 1367. Venue in this District is proper in that Defendant transacts business here and the conduct complained of occurred here.

## III.  PARTIES

3.  Plaintiff, LEZLIE CANADA (hereinafter "MRS. CANADA") is a natural person residing in Alameda County, California.

4.  Mrs. Canada is a "consumer" as that term is defined under 15 U.S.C. 1692(a)(3) and under California Civil Code 1788.2.  Mrs. Canada is a "debtor" as defined by California Civil Code 1788.2.

5.  Defendant CLIENT SERVICES (hereinafter "Defendant Collector") is a Missouri company, with a principal place of business located at 3451 Harry S. Truman Blvd., St. Charles, Missouri 63301, and who regularly engages in the business of collecting debts owed to third parties.

6.  Defendant Collector is authorized to do business and is doing business in the state of California.

7.  Defendant Collector regularly engages in the business of collecting debts on its behalf in Santa Clara County, California through means of interstate commerce, including the United States mails and the telephone.

8.  Defendant Collector is a "debt collector" as defined by 15 U.S.C. 1692(a)(6).

- 2 -

9.  Defendant Collector is a "debt collector" as defined by California Civil Code 1788.2.

10. Any reference hereinafter to "Defendant" or "Defendants" or "Defendant Collector" without further qualification is meant by the Plaintiff to refer to each Defendant named above.

## IV.  FACTUAL ALLEGATIONS

11. Sometime prior to 2004, Mrs. Canada incurred a consumer debt for personal, family or household purposes, namely, a Chase Manhattan Bank on a Visa credit card which she had used for purchases of personal food, clothing and shelter items (hereinafter "debt").

12. Due to personal financial problems, Mrs. Canada had difficulty repaying her debt to Chase Manhattan Bank and sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiffs.

13. On or about May 2004, Defendants began to call Mrs. Canada and demand payment for the debt.

14. During this period, Defendant Collector's employee, Don Bailey, phoned and spoke with Mrs. Canada numerous times.

15. Bailey also left several messages for Mrs. Canada.

16. In the first call, Bailey asked Plaintiff Mrs. Canada if she could make payments, but Mrs. Canada was unable to enter into a payment plan at that time.

17. Despite Mrs. Canada's comments, Bailey continued to call Mrs. Canada, approximately 15 times in the month of May 2004, with many of the calls occurring at about 8 a.m. on Saturdays and Sundays.

18. On one occasion Bailey sternly told Mrs. Canada that he had to come in early to call her because she had yet to pay her debt, and because of her he was missing his Sunday church service.

19. On another occasion Bailey told Mrs. Canada to get the money from her parents.

20. On a number of occasions, Bailey yelled and screamed so loudly that third-parties nearby could here his yelling and screaming.  Bailey would demand that Mrs. Canada give him an answer as to when she was going to pay.

21. During the course of these calls, Bailey called Mrs. Canada a liar and unprofessional on a number of occasions, as well as irresponsible at least once.

### Abusive Calls Following Cease and Desist Letter

22. On May 28, 2004, Mrs. Canada sent Defendants a cease and desist letter via U.S. Certified Mail, Return Receipt Requested.

23. The letter was signed for on June 1, 2004 by an employee of Defendant Collector.

24. However, despite the Defendant Collector's receipt of the Plaintiff's cease and desist letter, their abusive calls continued.

25. On or about August 2004, one of Defendant Collector's employees, Michael Bell, attempted to call Mrs. Canada at home and instead spoke with Mrs. Canada's 12-year old son.

26. During this collection call, Bell demanded to speak with Mrs. Canada.

27. On or about September 8, 2004, Bell called Mrs. Canada's home again in an effort to collect this debt.

28. Mrs. Canada asked what company he was calling from.  When Bell would not identify what company he was calling from, Mrs. Canada hung up.

29. During another collection call, after being told that Mrs. Canada was not at home, Defendant Collector's employee told her pre-teen son that they could see her car in the driveway, implying that her son was lying, and really frightening him and the rest of Mrs. Canada's family.

30. On or about September 21, 2004, another one of Defendant Collector's employees, Candice Riley, called Mrs. Canada's 73-year old father-in-law at his home.

31. Riley angrily stated that Defendants were looking for his son and needed to get a hold of him urgently.

32. Following that call, on or about September 21, 2004, Mrs. Canada called Defendants and spoke with Riley and her manager Tim Ryan.

33. Mrs. Canada informed both Riley and Ryan that she had previously sent a cease and desist letter to Defendants and that they were to have ceased communicating with her.

34. Mrs. Canada also provided Ryan with the names of those employees of Defendant Collector whom had continued to call her.

35. Ryan verified that those collectors were employed by Defendant Collector, but denied any knowledge of the cease and desist letter.

36. Ryan claimed that Defendants had not even received Mrs. Canada's collection file until August.

37. Mrs. Canada then asked Ryan whether a person named "A. King", who had signed the returned receipt card which had been sent with her cease and desist letter, was an employee of Defendants.

38. Ryan was silent.

39. In speaking to Ryan, Mrs. Canada again asked Defendant Collector and its employees to immediately stop calling her, writing her, contacting her neighbors, and contacting her relatives.

40. In response, Ryan simply again demanded payment.

41. Mrs. Canada then indicated to Ryan that she was attempting to refinance her home so she could pay this debt and thereafter the call ended.

42. On or about 9:00 a.m. September 27, 2004, one of Defendant Collector's employees, Jerry Peterson, called Mrs. Canada's voice mail at work.

43. Despite no prompt offering to be connected with the operator, Peterson pressed "0" and was connected with an operator.

44. Peterson then  told the company operator to page Mrs. Canada because he needed to speak with her right away.

45. Later that day, at or about 10:00 a.m., Peterson again called Mrs. Canada at work and a left a voice mail with his name, but he failed to identify where he was calling from.

46. Approximately 5 minutes later, Peterson again called Mrs. Canada after being previously instructed not to do so.

47. Mrs. Canada immediately asked Peterson to stop calling her at her work and told him she was afraid she would lose her job because of these harassing and abusive collection calls.

48. Peterson then began yelling at Mrs. Canada, asked her why she was not an honest person, and was otherwise belittling and degrading to Mrs. Canada.

49. After three minutes or so, Mrs. Canada was forced to terminate the abusive call.

50. On or about September 28, 2004, Defendant Collector and its employees again ignored Mrs. Canada's cease and desist letter, again ignored her verbal pleas, and again called her at work in an attempt to collect this debt.

51. The message left Defendant Collector's phone number and asked Mrs. Canada to return the call, but did not indicate what company the person was calling from.

52. On or about September 30, 2004, one of Defendant Collector's employees called and spoke to Mrs. Canada's 12-year old son, again telling him that they could see her car outside the house, despite the fact that Mrs. Canada's car was not outside the house.

53. Defendant Collector's employee then abusively demanded to know why Mrs. Canada's son was lying to them and her son was forced to hang up the phone.

54. On or about October 2, 2004, Peterson again called Mrs. Canada at home and work, leaving messages at both places.

55. Peterson again called Mrs. Canada at work on October 5, 2004, October 8, 2004, and October 15, 2004, but did not state what company he was calling from.

56. On October 20, 2004, Riley again called Mrs. Canada at work.

57. On or about October 28, 2004, Mrs. Canada sent Defendants, via U.S. Mail, Certified Return Receipt Requested, another cease and desist letter.

### *Summary*

58. On information and belief the deceptive practices described herein are routine for Defendants, having been sued on similar violations in the recent case of Dann v. Client Services, Inc., 04-02885 RMW (N.D. Cal., San Jose, CA 2004).

59. As a direct result of Defendants continued abusive practices Mrs. Canada has experienced insomnia, frustration, anxiety, anger, humiliation, shock, outrage, embarrassment, extreme distress, and marital problems.

60. Mrs. Canada has also suffered from crying fits as a direct and proximate result of Defendant Collector's and its employees' conduct in attempting to collect this debt.

61. Plaintiff has suffered from a lack of concentration, difficulty performing her job, and a constant fear of reprimand by her employer.

- 7 -

## V.  FIRST CAUSE OF ACTION - FDCPA

62. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

63. Defendants' course of conduct as more fully described above constitute numerous and multiple violations of the FDCPA, 15 U.S.C. §1692 et seq., including but not limited to the violations §§ 1692b, 1692b(1), 1692b(2), 1692b(3), 1692c(a)(1), 1692c(a)(3), 1692c(b), 1692d, 1692d(2), 1692d(5), 1692d(6), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), 1692e(11), and 1692f, amongst others.

64. As a result of Defendants' violations, Mrs. Canada is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs, pursuant to 15 U.S.C. 1692k et seq.

## VI.  SECOND CAUSE OF ACTION – ROSENTHAL FDCPA

65. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

66. The foregoing acts and omissions by these Defendants with respect to Plaintiff in their attempts to collect a consumer debt from Mrs. Canada constitute numerous and multiple unfair, deceptive, and/or unconscionable trade practices made unlawful pursuant to the California Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code secs. 1788-1788.32.

67. Defendants violated Civil Code 1788.17, which requires Defendants to comply with the FDCPA 15 U.S.C. §§ 1692 et seq. in all of their collection efforts.

68. Defendants violated Civil Code 1788.11 by using the telephone in an abusive and deceptive manner.

69. Mrs. Canada is entitled to recover statutory damages, actual damages, reasonable attorney's fees and costs.

## VII. - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

71. These Defendants engaged in extreme, outrageous and unreasonable acts with respect to Mrs. Canada in their attempts to collect this debt, and with a willful intent to injure her

72. These acts went utterly beyond the bounds of decency expected in a civilized society and the repeated acts constituted an intrusion upon seclusion.

73. Defendants intended to cause Mrs. Canada emotional distress, and/or negligently engaged in outrageous conduct with reckless disregard of the probability of negligently causing Plaintiff to suffer emotional distress.

74. Plaintiff has been diagnosed with coronary artery disease which has been exacerbated by the stress of these abusive debt collection practices by this defendant and its collection employees.

75. As a direct and proximate result of Defendants' outrageous conduct, Mrs. Canada has suffered severe mental distress, mental suffering, and/or mental anguish, including stress, frustration, nervousness, anxiety, worry, marital difficulties, crying fits, embarrassment and lack of concentration.

76. As a proximate result of defendants conduct, Mrs. Canada has suffered damages in an amount to be determined according to proof at trial.

77. Defendants intended to cause Mrs. Canada to suffer severe emotional distress, and/or negligently engaged in this outrageous collection conduct with reckless disregard of the

probability of negligently causing Plaintiff to suffer emotional distress.

78. Defendants acted with oppression, fraud, and/or malice, thereby entitling Mrs. Canada to punitive damages in an amount according to proof at trial

## VIII.  FOURTH CAUSE OF ACTION – TORTS

79. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

80. The foregoing acts of Defendants as described herein constitute intentional and negligent infliction of emotional distress upon Plaintiff, as well as an invasion of the Plaintiff's privacy and an intrusion upon her right of seclusion.

81. Mrs. Canada has a common law right to and a reasonable expectation of privacy at her places of residence and employment.

82. Defendants' abusive collection practices in the collection of this debt constituted a substantial invasion upon Plaintiff's seclusion and privacy, and would be highly offensive to a reasonable person.

83. Defendants violated a statutory duty to another and are thus liable under the doctrine of "Tort-in-se."

84. Mrs. Canada is entitled to recover actual and punitive damages.

85. Defendants engaged in extreme and outrageous acts with a willful intent to injure.  These acts went beyond the bounds of decency expected in a civilized society.

86. Defendants intended to cause emotional distress, and/or engaged in reckless disregard of the probability of causing Plaintiff emotional distress.

87. As a direct and proximate result of Defendants' outrageous conduct, Mrs. Canada has suffered severe mental distress, mental suffering, and/or mental anguish, including stress,

frustration, nervousness, anxiety, worry, marital difficulties, crying fits, embarrassment and lack of concentration, amongst other negative emotions.

88.  As a proximate result of Defendants' conduct, Plaintiffs has suffered damages in an amount to be determined by proof and a finder of fact at trial.

89.  Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

**WHEREFORE, Plaintiffs respectfully prays that judgment be entered against the Defendants for the following:**

     A.  Statutory damages pursuant to 15 U.S.C. 1692k

     B.  Statutory damages pursuant to California Civil Code 1788.17.

     C.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692(k), California Civil Code 1788.17  and Civil Code 1788.30.

     D.  Actual and punitive damages.

     E.  For such other and further relief as may just and proper.

Respectfully submitted**,**

_____          _____
Ronald Wilcox                                                    Date
Attorney for Plaintiffs


**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs demand trial by jury in this action.

_____          _____
Ronald Wilcox                                                          Date

- 11 -